466

CLAUDE NEWMAN, Appellant v. SEARS, ROEBUCK & COMPANY, a foreign corporation, and Alfred S. Dale, Respondents.

(43 NW2d 411)

Opinion filed June 30, 1950. Rehearing denied Aug. 17, 1950

*Murray & Murray,* for appellant.

*Cox, Cox & Pearce,* for respondent, Sears, Roebuck & Company.

*Sullivan, Kelsch & Lord,* for respondent Dale.

GRIMSON, J. The defendant, Alfred S. Dale, was the owner of an apartment house in the City of Bismarck, North Dakota. In August 1947, he ordered from Sears, Roebuck & Company, three folding beds. Sears, Roebuck & Company contracted their supply of said beds from the manufacturer, Superior Sleeprite Corporation of Chicago. When the Dale order was received Sears, Roebuck & Company directed the shipment of three beds to be made by the Superior Sleeprite Corporation direct to the defendant, Dale, at Bismarck. When they were received defendant Dale had one Christ Nelson install one of these beds in one of his furnished apartments. A Mrs. Holum was then the occupant of the apartment and immediately made use of the bed. Later defendant, Dale, and his wife occupied the apartment and used the bed. Then about the 27th day of December 1947, the plaintiff and his wife rented the premises, including the bed. About 10 o'clock on the evening of Feb. 28, 1948, after plaintiff had gone to bed, the bed collapsed and plaintiff was seriously injured. For the damages so sustained plaintiff brings this action.

In his complaint the plaintiff claims that the defendant, Sears, Roebuck & Company manufactured or supervised the manufacture of this bed and gave instructions for its installation. That it was faulty and defective in design and construction and in particular that the screws furnished to attach it to the floor were insufficient to hold the bed in position; that because thereof

said bed was inherently dangerous; that the defendant, Sears, Roebuck & Company had, or should have had, knowledge thereof; that it, nevertheless, sold the same without giving notice of such defect. Then he claims that the defendant, Dale negligently installed said bed with insufficient wood screws, which he knew, or should have known, made said bed inherently dangerous for use. He claims that the plaintiff rented the apartment furnished with this defective bed; that no notice of this latent defect was given the plaintiff although the defendant, Dale, knew or should have known thereof; that instead the bed was represented as safe for the purpose for which it was intended to be used. He claims that the negligence of the defendants in connection with the manufacture and installation of the bed resulted in the collapse of the bed and was the proximate cause of the injuries the plaintiff received. Both the defendants deny all negligence and defendant, Sears, Roebuck & Company, specifically denies that it had anything to do with the delivery or installation of the bed. A jury was waived and the case tried to the court. After hearing the evidence and the argument of counsel the court found for the defendants and dismissed the action. This appeal was taken and a trial de novo demanded.

The first question involved in this lawsuit is the liability of the defendants or either of them. Not unless liability is established does the amount of damages become material in this case. The District Court found no liability against the defendants so did not pass on the amount of damages.

The evidence shows that this folding bed is made of iron; that the feet under the head of the bed are welded to an angle iron frame which has seven holes through which lag screws attach it to the floor; that there were furnished with the bed for that purpose seven lag screws, of a size and design, specified to have a sufficient holding power when screwed into a wooden floor to hold the bed in place. These lag screws were 1½ inches long, 5/16th. inches in diameter. Connecting the angle iron and the frame of the bed were six coil springs about ¾ths. of an inch in diameter and 11½ inches long. The coil was of 12 gauge, steel wire, a little heavier than the wire used for ten penny nails.

As the bed is lifted up or down these springs act as a counter balance making it easier to raise or lower the bed.

The District Court found that there was no fault in the design or manufacture of the folding bed and that there was nothing inherently dangerous in its construction or operation; that sufficient lag screws were furnished by the manufacturer for the proper installation of the bed; that the defendant, Sears, Roebuck & Company had nothing to do with the installation and was in nowise liable for the collapse of the bed or injuries of the plaintiff. That finding is in accord with the evidence.

The evidence further shows that there was a double floor 1½ inches thick in the Dale apartment where this bed was installed. The top floor was of 13/16 inch oak, comparatively new. While Nelson testified that he did not remember the kind of screws he used in attaching the bed to the floor the evidence warrants the conclusion that he did not use the lag screws furnished, but, instead, used ordinary wood screws 1½ inches long but only 5/32nds. inches in diameter. Not only the size but also the threads of the screws show that the lag screws designated to hold the bed in place had at least four times the holding power of the wood screws used.

As the bed is lowered the coil springs stretch and pull up on the angle iron with considerable force. When the angle iron becomes loosened from the floor the pull of these springs causes the bed to roll forward, fall to the floor and the head to collapse over the bed. The evidence shows that is what happened.

Assuming that the use by Nelson of those wood screws for fastening the bed was negligence and was the proximate cause of the bed becoming loose and collapsing to the injury of the plaintiff, the question arises whether the defendant, Dale, is liable therefor. That raises the question whether Nelson was an independent contractor or a servant of Dale.

As a general rule an employer is not liable for the torts of an independent contractor. "This rule of the nonliability of an employer is based upon the theory that the characteristic incident of the relation created by an independent contract is that the employer does not possess the power of controlling the person

employed as to the details of the stipulated work, and it is, therefore, a necessary judicial consequence that the employer shall not be answerable for an injury resulting from the manner in which the details of the work are carried out by the independent contractor." 27 Am Jur 504; 18 ALR 801 Annotation. An employer may become liable for the torts of his servants under the doctrine of respondeat superior, 57 CJS 266; 35 Am Jur 959.

Section 34-0401 NDRC 1943, defines a servant as "one who is employed to render personal services to his employer, otherwise than in the pursuit of an independent calling and who, in such service, remains entirely under the control and direction of the latter, who is called his master." Of this definition, Chief Justice Bruce in Montain v. Fargo, 38 ND 432, 440, 166 NW 416, LRA1918C 600, writing for this court says: "This definition of a servant, where it is sought to distinguish between a servant and an independent contractor, affords by inference a definition of an independent contractor, an independent contractor being considered a person employed to execute work, who was not within the definition of servant."

"One of the most important tests to be applied in determining whether a person who is doing work for another is an employee or an independent contractor is whether the person for whom the work is done has the right to control not merely the result, but the manner in which the work is done and the method used." Janeck v. Workmen's Compensation Bureau, 67 ND 303, 272 NW 188. See also Bernardy v. Beals, 75 ND 377, 28 NW2d 374 and cases cited.

In determining whether a workman is an independent contractor or employee all the circumstances of the case and the attitude and intent of the parties must be considered. 27 Am Jur 480, 58 Am Jur 670; Knuffe v. Bartholomew, 106 Nebr 763, 184 NW 889; Lowe v. Chicago Lumber Co. of Omaha, 135 Nebr 735, 283 NW 841; 1 Schneider's Workmen's Compensation Law 285.

The evidence shows that Nelson was a carpenter of many years' experience; that his brother and his two sons worked together; that there was a general agreement between Dale and

Nelson that Nelson should make repairs on Dale's apartments whenever called by Dale or his tenants; that the only instruction given by Dale to Nelson was to make the repairs called for according to his best judgment; that instructions were given by Dale to his tenants to call Nelson if carpenter repairs were needed. Nelson drew no salary. Instead such repairs were paid by Dale on a bill rendered at the completion of each job. Dale exercised no supervision over any particular job. Nelson had the right to hire help or to have others do the job for him in case he was otherwise employed. The particular job here involved was an installation of a folding bed, making it a processed, usable article. Nelson was, by the owner, Dale, given the right to possession of the premises as far as necessary for the installation, which provision was acquiesced in by Mrs. Holum, the tenant at the time. Some alterations in a partition were necessary. It required the special skill of a carpenter. That work was not a part of Dale's regular business but was in line with Nelson's regular work. No directions were given as to when or how the job should be done. Neither Dale nor his wife were present when it was done. They accepted the finished product of the work. From that evidence it is clear that Dale had no control and reserved no right of control over how Nelson performed the work of installation nor the methods he used.

In the case of Hilliard v. Richardson, 3 Gray (Mass) 349, 63 American Decisions, 743, the court held: "Relation of Master and Servant does not exist between owner of land and a carpenter, over whom he has no direction or control, whom he employs to alter and repair certain buildings and furnish the materials therefor, for a specified price; their relation is that of employer and contractor, and such land-owner is therefore not liable for damages resulting to a third person."

In the case of Starkenberg v. North Dakota Workmen's Compensation Bureau, 73 ND 235, 13 NW2d 395, this court held that: "One who contracts to construct a building for another, in accord with a stipulated plan, without being subject to the latter's superintendence, order, or control in respect of the details of the work; who has absolute control of the work, may work such hours as he sees fit to work, may do the work himself or employ

others to assist, and is to be paid a definite, stipulated sum when the building has been fully completed, is not an employee but is an independent contractor."

The facts in that case are quite parallel with the facts in the case at bar, excepting the job there was erecting a building at a stipulated price instead of doing a repair job as here. Starkenberg agreed to build a number of granaries for a lumber company according to plans and specifications furnished. He had complete charge of the work and was paid for each granary as it was finished and accepted. That is in substance the agreement between Dale and Nelson. Nelson was to do each repair job in such manner as he thought best and was to be paid when each job was finished and accepted.

The District Court found that Nelson was an independent contractor. That finding must be given appreciable weight by this court. State v. City of Williston, 72 ND 486, 8 NW2d 564, 568. Considering that finding and all the circumstances shown in the evidence Nelson must be held to have been an independent contractor in installing the bed.

The appellant, however, argues that even if Nelson is held to have been an independent contractor the nature of the work done was such as to render Dale, the employer, liable. He cites the case of Ruehl v. Lidgerwood Telephone Company, 23 ND 6, 135 NW 793, which holds "Where in the making of an improvement, it is manifest that injury is likely to result unless due precautions are taken, a duty rests upon him who causes the work to be done to see that such necessary precautions are taken." In that case the telephone company hired a man to dig holes for telephone poles at so much per hole. He dug a hole in the yard of a man for whom the company had contracted to install a telephone and left it unguarded. A 3½ year old boy fell into the hole and was either drowned or smothered in the mud. The court held that even if the man who dug the hole was an independent contractor the telephone company employer was liable. The principle laid down in that case was further discussed in Taute v. J. I. Case Threshing Machine Company, 25 ND 102, 141 NW 134. In that case one, Kerr, contracted to bring into

the town of Tolley from a distance of 12 miles, a steam engine. On the way a fire started nearby and the suit was brought for damages on the theory that the fire was started from the engine because of the negligence of Kerr. The court says: "It is no doubt the law that an owner of property can be held liable in damages in certain cases even where the work is entrusted to an independent contractor, and where the work ordered to be done or the structure ordered to be erected is, in itself, intrinsically dangerous or a nuisance. The origin and reason of this rule is the duty of due consideration which one in a civilized community owes to his fellows and to the public, and that such a duty precludes the ordering of that which, if done, will be inherently dangerous. These considerations are hardly applicable to the case at bar. It can hardly be said as a matter of law that the machine was a nuisance, or that the moving of it was an essentially dangerous transaction."

The distinction between the cases in which the owner is held liable for work which he engaged an independent contractor to perform and that for which he is not held liable is thus made clear. In the first classification is the work which even if carried out according to the orders of the owner is inherently dangerous to people, such as the open hole dug in the Ruehl case. In the second classification is such work which when accomplished is not in itself dangerous to people such as the moving of the engine in the Taute case. Applying that distinction to the case at bar the folding bed itself when properly installed is not inherently dangerous and does not constitute a nuisance per se. It was, we shall assume, the use of the wood screws, not the bed itself or the ordinary installation of it that was dangerous. The use of wood screws was not ordered by Dale and not known by him. Clearly the evidence here shows that the work delegated by Dale to Nelson comes within the second classification for which Dale cannot be held responsible.

Appellant argues further that there is a statutory duty on defendant Dale to put the premises devised in condition fit for human use and to keep them in repair. He cites Sec 47-1612 NDRC 1943, which provides: "The lessor of a building intended for the occupation of human beings must put it into a condition

fit for such occupation and must repair all subsequent dilapidations thereof in the absence of an agreement to the contrary, except that the lessee must repair all the deteriorations or injuries thereto occasioned by his ordinary negligence."

The following Section 47–1613 NDRC 1943, provides that if the lessor fails to repair after notice then the lessee may repair at lessor's cost or vacate the premises.

There is some question whether the bed in question can be considered a part of the realty so as to come within these sections. In the case of Fisher v. Pennington, 116 Calif App 248, 2 P2d 518, it is said that "Renting of the bed, personal property, attached to the door, real property, presents a mixed contract of hire of personalty and realty." However, it may be argued that because the bed was attached to the floor it became a fixture. Furthermore, Sec 47–1502, sub-sections 3 and 4, and Sec 47–1503, NDRC 1943, make similar provision regarding renting of personal property as Sec 47–1612 and 47–1613 do for real property. These statutes plaintiff claims are incorporated in every leasing contract and it is so held in Armstrong v. Thompson, 62 SD 567, 255 NW 561.

Housing laws have been passed in many states varying in different degree the common law rule of nonliability of landlord to his tenant. The courts have differed in their interpretation of the statutes according to the language thereof. 52 CJS 20; 4 Thompson on Real Property 35; 93 ALR 778; 32 Am Jur 524. The main purpose of these housing laws seems to have been to promote the health, safety and welfare of the people in general. Unless there is a direct liability imposed upon the landlord these statutes are generally held not to alter the common law relationship of landlord and tenant, but merely to give the tenant a right of action to enforce better housing conditions. It is generally held that such statutes are not to be extended by implication. Palmigiani v. D'Argenio, 234 Mass 434, 436, 125 NE 592; Callahan v. Laughran, 102 Cal 476, 26 Pac 835. Of statutes similar to our Section 47–1612 NDRC 1943 it is said in 52 CJS 20 that "a landlord is not liable for personal injuries where the statute requires the landlord to put the premises in a condition fit for occupation and to make repairs on notice, but gives

the tenant the right to make repairs if the lessor neglects to do so and to deduct the expense of such repairs from the rent."

A Massachusetts law provided that every structure "shall be maintained in such repair as not to be dangerous. The owner shall be responsible for the maintenance of all buildings and structures." In construing that law the court said that it "does not expressly attempt to modify or affect in any way the relations between landlord and tenant as they exist at common law." Vallen v. Cullin, 238 Mass 145, 130 NE 216.

There are decisions to the contrary especially in Michigan, Annis v. Britton, 232 Mich 291, 205 NW 128, and in cases brought under the Tenement Housing Law of New York. Altz v. Lieberson, 233 NY 16, 134 NE 703, 704. In the case of Johnson v. Carter, 218 Iowa 587, 255 NW 864, the Iowa court analyzes many of those cases especially those of New York, Michigan and Massachusetts. It is pointed out that in the New York statute the liability is expressly directed against the landlord and of the Michigan and Massachusetts decisions the court says: "We are inclined to the view that the construction placed upon statutes of this nature by the Massachusetts court is preferable to that of the Michigan court."

Our sections 47–1612 and 47–1613 NDRC 1943 are almost verbatim the same as sections 1941 and 1942 of the Civil Code of California. In the case of De Motte v. Arkell, 77 Cal App 610, 247 Pac 254, it is held: "The allegations of the complaint setting forth the substance of Section 1941 of the Civil Code that the building was intended for human occupation does not present a situation where the common law in relation to the duties and liabilities of landlords to tenants does not apply. As set forth in 15 Cal Jur 704: 'In the absence of fraud, concealment, or covenant in the lease, a landlord is not liable to a tenant for injuries due to the defective condition or faulty construction of the demised premises. This is the rule at common law, and it has not been changed by section 1941 of the Civil Code." Willson v. Treadwell, 81 Cal 58, 22 P 304; Van Avery v. Ogg, 59 Cal 563.

In Siever v. Blanc, 76 Cal 173, 18 Pac 261, the court held, "That the obligations imposed upon a landlord by Section 1941 'should

be limited by the extent of the privilege conferred upon the tenant' by Section 1942; and that therefore the only consequence of a breach of the landlord's obligation is that the tenant may either vacate the premises or expend one month's rent towards the repairs after notice, etc." See also Gately v. Campbell, 124 Cal 520, 57 Pac 567; Johnson v. Carter, 218 Iowa 587, 255 NW 864; Angevine v. Knox-Goodrich, 96 Cal 17, 31 Pac 529, 18 LRA 264. Consistent with these authorities we hold, that while Sections 47–1612 and 47–1613 give the tenant new remedies against a landlord they do not otherwise alter the relationship of landlord and tenant under the rule of the common law and that under that rule there is no liability on Dale in this case.

There is, however, an exception to the common law rule to the effect that there is liability on the landlord for injuries suffered by the tenant on account of defects in leased premises when such defects are latent but known to the landlord and not communicated to the tenant. In Shotwell v. Bloom, 60 Cal App 303, 140 Pac2d 732, it is held that "If there is some hidden defect in the premises or danger therefrom which is known to the lessor at the time of making the lease but which is not apparent to the intending lessee, the lessor is bound to inform the latter thereof and failing so to do is liable for injuries to the tenant arising therefrom." See also Restatement of the Law of Torts, Vol 2, Page 969, Sec 538; 1 Toffany, Landlord and Tenant, 562. Stanley v. Lander, 3 Cal App2d 284, 39 Pac2d 225.

It is generally held, however, that lessor is under no duty to make an inspection of the premises to ascertain their actual condition. "The views supported by the better reason as well as by courts carrying a greater weight limits the obligation of the landlord to disclosing defects already known to him without examining the property to discover defects." 4 Thompson on Real Property, 19. See also Restatement of the Law on Torts, supra.

The only agreement between the plaintiff and Dale for the renting of this apartment shown in the evidence is that a sister of plaintiff's wife called up either Dale or his wife in Fargo asking if plaintiff could rent that apartment which request was granted. There were no inducements or representations made

by Dale or his wife to the plaintiff or his agent to secure him as a tenant. No warranties of any kind as to the apartment or its furnishings were made to the plaintiff. Dale had no knowledge of the latent defect in the installation of the folding bed. No deceit or fraud on his part appears in the evidence. The plaintiff had not called upon Dale for any repairs, nor given any notice of any defects. Under these circumstances Dale can not be held for damages resulting from a latent defect in the folding bed here involved. "Generally, a landlord is not liable for injuries to tenant resulting from latent defect in premises, in absence of proof of knowledge and concealment on his part." Forester v. Hoover Hotel & Investment Company, 87 Cal App 2d 226, 196 Pac 825.

The judgment of the District Court is affirmed.

CHRISTIANSON, BURKE and MORRIS, JJ., concur.