**WRAY M. SCOTT COMPANY, Inc., a Corporation, Appellant,**

v.

**Carolyn DAIGLE, Administratrix of the Estate of Zenie Daigle, Deceased, and Peter Kiewit Sons Company, a Corporation, Appellees.**

**No. 17051.**

United States Court of Appeals Eighth Circuit.

Oct. 29, 1962.

John R. Barton, Omaha, Neb., for appellant. Raymond M. Crossman, Omaha, Neb., on the brief.

Alfred A. Fiedler, Omaha, Neb., for appellees. Alto V. Watson, Beaumont, Tex., on the brief.

Before JOHNSEN, Chief Judge, and MATTHES and RIDGE, Circuit Judges.

MATTHES, Circuit Judge.

Zenie Daigle was an employee of Peter Kiewit Sons Company, and on August 4, 1959, while engaged with others in the construction of cement bins in Louisville, Nebraska, fell and sustained injuries which caused his immediate death. At that time Daigle was a citizen of the State of Texas. Daigle's widow, Carolyn, was appointed as administratrix of his estate by the County Court of Jefferson County, Texas. The administratrix instituted this action in the United States District Court for the District of Nebraska against Wray M. Scott Company, Inc., the appellant herein, for the purpose of recovering for the alleged wrongful death of Daigle.[1] In brief, the pleaded theory of liability of Scott was that it had furnished to Kiewit a faulty and defec-

1. For the sake of brevity, we shall hereinafter refer to Wray M. Scott Company, Inc., as Scott or appellant; to Peter Kiewit Sons Company as Kiewit and to Carolyn Daigle, Administratrix, etc., as plaintiff.

tive lead cable; that Daigle was using said cable and because of the defect therein, he was caused to fall to his death.[2] Plaintiff did not allege negligence on the part of Kiewit but joined it as a party defendant because it had made payments to plaintiff under the Nebraska Workmen's Compensation Law and was subrogated to plaintiff's right of recovery against Scott to the extent of the payments made by Kiewit.

Plaintiff recovered a verdict against Scott in the amount of $26,228.82. The court entered judgment thereon and further directed that $4,805 thereof be paid to Kiewit's insurer.

Jurisdiction has been established by reason of the amount involved and diversity of citizenship of the parties.

Scott, at the conclusion of the whole case, moved for a directed verdict, and after the verdict and judgment, moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. These motions were denied. Here, Scott's principal point is that the court erred in denying the motions and in submitting the case to the jury. The posture of the case in this court is such that we are required to determine whether the evidence was sufficient to permit the jury to resolve these questions: (1) was the cable in question in a defective and dangerous condition at the time Scott delivered it to Kiewit; could Scott have discovered the defect in the cable by timely and proper inspection before delivering the same to Kiewit and to have warned Kiewit or its employees of the dangerous and unsafe condition of the cable; and (2) was the defective cable the proximate cause of Daigle's death? We observe that there is no issue or controversy concerning the dangerous and unsafe condition of the cable as the result of the de-

fective splice. Indeed, Scott frankly concedes in its brief that "the manner in which the cable had been joined, was improper and defective; that is, someone had merely overlapped the two bare ends of the cable and then wrapped that area of the cable with friction tape."

While not raised by the parties, we are nevertheless confronted with the question whether the state or federal standard or test of the sufficiency of the evidence controls in a diversity case in federal court; a question that has not been resolved by the Supreme Court. Dick v. New York Life Ins. Co., 359 U.S. 437, 444–445, 79 S.Ct. 921, 3 L.Ed.2d 935, and cases cited; 5 Moore's Federal Practice (2 Ed. 1951) § 38.10, 1961 Cumulative Supplement, pp. 7 and 8. Since Dick, we have refrained from making determination of the question in at least three cases where the state and federal standards are substantially alike and where the parties assumed that the state test controlled. Ford Motor Co. v. Mondragon, 8 Cir., 271 F.2d 342; Lewis v. Nelson, 8 Cir., 277 F.2d 207; Hanson v. Ford Motor Co., 8 Cir., 278 F.2d 586.

The Supreme Court of Nebraska has enunciated the test applied in that state in numerous cases. That Court's view is typified in the following pronouncements:

Graves v. Bednar, 171 Neb. 499, 503, 107 N.W.2d 12, 15:

"In Owen v. Moore, 166 Neb. 239, 88 N.W.2d 768, we held: 'In a case where different minds may reasonably draw different conclusions or inferences from the adduced evidence, or if there is a conflict in the evidence as to whether or not the evidence establishes negligence or contributory negligence, and the degree thereof, when one is compared

2. In pertinent part the complaint alleged that the death of Daigle was caused by the negligence of Scott in furnishing a faulty and defective cable that was inferior in quality to that reasonably expected by Kiewit; that the cable was not safe and fit for the use intended; that the cable was improperly spliced at the point of breaking and thereby created a dangerous instrumentality, and Scott knew or should have known of said danger at the time it leased the cable to Kiewit; that Scott failed to make due and timely inspection of the cable, and that if Scott did know of the dangerous condition, it failed to warn Daigle or his employer.

with the other, such issues must be submitted to a jury.'

\* \* \* \* \* \*

"In Griess v. Borchers, 161 Neb. 217, 72 N.W.2d 820, 822, we held: 'Negligence is a question of fact and may be proved by circumstantial evidence. All the law requires is that the facts and circumstances proved, together with the inferences that may be legitimately drawn from them, shall indicate, with reasonable certainty, the negligent act complained of. \* \* \*.'"

Snyder v. Farmers Irr. Dist., 157 Neb. 771, 780–781, 61 N.W.2d 557, 563:

"'Where different minds may draw different inferences or conclusions from the facts proved, or if there is a conflict in the evidence, the matter at issue must be submitted to the jury to be determined; but where the evidence is undisputed, and but one reasonable inference can be drawn from the facts, the question is one of law for the court.' \* \* \* 'It is not the province of this court in reviewing the record in an action at law to resolve conflicts in or weigh the evidence. It is preor weigh the evidence.

"'It is presumed in such an action that controverted facts were decided by the jury in favor of the successful party, and its finding based on conflicting evidence will not be disturbed unless clearly wrong.' "

See also Baer v. Schaap, 168 Neb. 578, 587, 97 N.W.2d 207, 213; on rehearing, judgment of trial court reversed in 171 Neb. 347, 106 N.W.2d 468.

In Howell v. Robinson Iron & Metal Co., 173 Neb. 445, 113 N.W.2d 584, 587, the Nebraska Court dealt specifically with circumstantial evidence in the following language: ·

"From the various pronouncements on this subject it appears that two guiding rules have emanated. One is as follows: 'Negligence is a question of fact and may be proved by circumstantial evidence and phys-

ical facts. All that the law requires is that the facts and circumstances proved, together with the inferences that may be properly drawn therefrom, shall indicate with reasonable certainty the negligent act charged.' Gilliland v. Wood, 158 Neb. 286, 63 N.W.2d 147. See, also, Shields v. County of Buffalo, 161 Neb. 34, 71 N.W.2d 701.

"The other, which is found in Bedford v. Herman, 158 Neb. 400, 63 N.W.2d 772, is the following: 'In order for circumstantial evidence to be sufficient to require the submission of an issue of negligence to a jury it must be such that a reasonable inference of negligence arises from the circumstances established. If such evidence is susceptible to any other reasonable inference, inconsistent with the inference of negligence on the part of the party charged, it is insufficient to carry the case to the jury.' "

The federal standard to be applied in determining the sufficiency of the evidence to support the verdict in a diversity case, as stated in Coca-Cola Bottling Co. of Black Hills v. Hubbard, 8 Cir., 203 F.2d 859, includes the following rules: (1) All facts which plaintiff's evidence reasonably tends to prove must be assumed to have been established, and all inferences fairly deducible from such facts must be drawn in his favor; (2) the verdict should be directed only where all the evidence is on one side or so overwhelmingly on one side as to leave no doubt what the fact is; (3) the question of negligence is usually one of fact for the jury, and it is only where the evidence, even though it be uncontradicted, is such that all reasonable men must draw the same conclusion from it that the question of negligence becomes one of law for the court; (4) where inconsistent inferences reasonably may be drawn from the evidence, it is for the jury to determine which of the inferences shall be drawn; (5) when the sufficiency of the evidence to make a case for the jury

presents a doubtful question of local law, the court of appeals will accept the views of the trial court unless convinced of error; (6) the burden of demonstrating error is upon the appellant. See also Greene v. Werven, 8 Cir., 275 F.2d 134.

■ Our court, in Ford Motor Company v. Mondragon, 8 Cir., 271 F.2d 342, 345, reiterated the test of the sufficiency of *circumstantial* evidence under federal law, quoting from earlier cases as follows:

"It is not necessary in establishing a necessary fact by circumstantial evidence that a party upon whom the burden of proof rests shall present evidence to dispel all contradictory inferences. It is necessary, however, that such party produce evidence of facts and circumstances which may be accepted by the trier of the fact as establishing with reasonable certainty the truth of the inference contended for.

\* \* \* \* \* \*

"If the proven facts give equal support to each of two inconsistent inferences then judgment must go against the party upon whom rests the necessity of sustaining one of these inferences. The essential inference cannot be left to conjecture and speculation. \* \* \*."

It may be noted that the federal test of sufficiency of circumstantial evidence is substantially the same as the Nebraska standard.

■ Having noted the controlling standards in Nebraska and in the federal courts, we now give attention to the evidence, a summary of which will suffice. During the spring and summer of 1959, Kiewit was erecting additions to the Ash Grove Cement Plant in Louisville, Nebraska. On or about June 16, Kiewit leased three Lincoln welding machines and four 200-foot lead cables from Scott. John Olig was Scott's warehouse superintendent and was in charge of maintenance of the cables. He testified that on the day before the machines and cables were delivered to Kiewit, he inspected each of the four cables by rolling or stretching them out full length on the floor. The cables were approximately ¾ of an inch in diameter, made of copper wire having a thickness of approximately ½ inch, and covered with rubber insulation. Because of the thickness of the wires and insulation, a cable 100 feet long was quite heavy. The evidence disclosed that it was not unusual for the insulation to become cut or broken by the treatment it received while in use, and that such broken or cut places would be covered by friction tape. It was also established that on occasions it was necessary to splice the cable where it had been broken and sometimes one length of cable would be connected to another length or section. There were approved methods of making such a splice or connection whereby the cable would be safe for use. Friction tape was used to cover and insulate the copper wires which had been joined by a proper and safe splicing operation. Olig testified that he observed several taped areas on the cables, and while there is some conflict in his testimony as to whether he made a visual or manual inspection, the jury could find that all Olig did was to make a visual inspection of each cable by walking along the cable stretched out full length on the floor. There was also evidence from which the jury could find that the proper method of inspecting the cable and particularly the taped places thereon was to manually feel and examine such areas or unwind the tape for the purpose of determining whether the splicing was in accordance with approved methods.

So much for the general picture. On the morning of August 4, 1959, Daigle, an iron worker, was working on a platform in one of the concrete bins or silos some distance above the ground level. Immediately before he fell, he was pulling on the lead cable. The only eyewitness to the incident, one Headley, testified in substance that Daigle had his welding lead hang up on him on some railroad ties they had for cribbing. Daigle went down and unhooked it, then came back up the ladder and started pulling. While

Headley was standing there, he saw a "big ball of fire" and upon looking around saw Daigle fall through an opening in the platform. As we have seen, the cable which Daigle was using was concededly unsafe and dangerous.

■ From the foregoing factual setting, it becomes evident that the crucial question that was litigated is whether the cable was in the concededly defective and unsafe condition at the time it was delivered to Kiewit and whether Scott could have discovered the defective condition by a proper and timely inspection. Since there was no direct evidence as to when or by whom the defective splice was made, the jury was required to resolve this issue by considering all of the evidence, including pertinent circumstances. As to this phase of the case, it was established by the testimony of an employee of Kiewit that on the morning of August 4 he had "checked out the equipment" and ascertained that the cable that Daigle was using was attached to a Scott machine. We also regard as significant that this same witness testified "We absolutely don't make splices," and that a supervisory employee of Kiewit testified, in summary, that "to his knowledge the welders on the job did not do any wrapping to welding cable on the job, or splice any cable on the job, that it was handled by electricians, that he did not know of any cable being spliced on the job prior to the time this accident happened. Ordinarily, if something [like] that occurred on a job, the cable being severed or something, it would be reported to him." Finally, witness Peterson, an iron worker foreman for Kiewit, stated: "It is normal procedure that if the cable needs to be spliced it is reported to him and he would get an electrician to come and splice it." From the foregoing evidence and other relevant facts and circumstances, we are impelled to conclude that the jury could reasonably infer that the cable was defective at the time of delivery thereof to Kiewit and that the evidence in totality is not susceptible to any other reasonable inference.

In summary, we hold that under either the Nebraska test or the federal test, the evidence was sufficient to support the jury's verdict and, accordingly, the court did not err in denying Scott's motion for a directed verdict or its after-trial motions for judgment notwithstanding the verdict.

Appellant also contends that the court committed prejudicial error in permitting witness James Ferry to testify on behalf of plaintiff over objections because his name did not appear in plaintiff's answers to interrogatories that had been submitted by Scott under Rule 33, Federal Rules of Civil Procedure, 28 U.S.C.A. In response to such interrogatories, plaintiff did furnish the names and addresses of certain individuals who had knowledge of pertinent facts regarding the alleged accident, but Ferry's name was not included.

This claim or error requires us to determine whether the trial court abused its discretion in allowing the witness to testify.

■ While Rule 33 is to be given a broad and liberal interpretation in the interest of according the parties the fullest knowledge of the facts and of clarifying and narrowing the issues, nevertheless the scope and use of interrogatories are matters addressed to the sound discretion of the trial court. Newell v. Phillips Petroleum Co., 10 Cir., 144 F.2d 338; Moorman v. Simon, W.D.Mo., 8 F.R.D. 328; 4 Moore's Federal Practice (2 Ed. 1950) § 33.02, p. 2260. This discretion extends to the sanctions to be applied if a party fails to reveal the name of a witness. Wroblewski v. Exchange Insurance Ass'n of Chicago, 7 Cir., 273 F.2d 158, 162.

■ We have examined the record pertaining to the alleged error and are unable to find any basis for holding that the court abused its discretion. Appellant does not seriously contend that it was prejudiced by the failure of plaintiff to disclose the witness's name in advance of the trial, and in our view no prejudice resulted.

Affirmed.