GILGER, Respondent, v. MONTGOMERY LUMBER
COMPANY, Appellant

(47 N. W.2d 281)

(File No. 9157. Opinion filed April 9, 1951)

**R. E. Driscoll, Jr.,** Lead, **Smiley & Clark,** Belle Fourche, for Appellant.

**Penfold & Overpeck,** Belle Fourche, for Respondent.

RUDOLPH, P.J.   Plaintiff recovered judgment against defendants for damages for breach of warranty.   Defendants have appealed.   We have concluded the judgment should be affirmed.

The trial court submitted the case to the jury under instructions to which no exceptions were taken. The alleged errors upon which appellants rely relate to the refusal of the trial court to direct a verdict and certain rulings relating to the admission and rejection of evidence. The motion for a directed verdict was based upon three principal grounds all of which questioned the sufficiency of the evidence, and which will be referred to in detail in our later discussion.

Plaintiff claimed that he purchased cinder blocks from the defendants for use in constructing basement walls, that defendants warranted these blocks to be of sufficient strength for the construction work for which they were purchased and concerning which defendants were advised. That the blocks were not of sufficient strength, that the plaintiff was damaged because of the failure of the blocks, and that within a reasonable time after the failure plaintiff notified defendants thereof.

■ Appellants have not presented any argument upon the insufficiency of the evidence to establish that the warranty was in fact made, which was one of the grounds set forth in the motion for a directed verdict, the denial of which is assigned as error. Not having briefed this phase of the case the alleged error is deemed waived. Hirning v. Forsberg, 49 S.D. 46, 206 N.W. 471; New York Life Ins. Co. v. Hyde et al., 68 S.D. 516, 4 N.W.2d 812.

■ ■ SDC 54.0149 in part provides: "* * * if after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor." Appellants contend that the evidence fails to show that notice was given in compliance with this statutory provision. Respondent testified that within the week after the time he contends the blocks failed he saw one of the partners and advised him as follows: "Well, I told Jack the house had gone, that the foundation had given out, the bricks were rotten and it had squashed and had broken my house all to pieces. And he said he couldn't hardly believe it. I said, 'It's so, Jack.' And I wanted him to come out and look at it." On cross-examination he added: "And I said I felt as though it wasn't my fault and I wished he could do something about it. And Jack just laughed * * *."

SDC 54.0149 is Section 49 of the Uniform Sales Act. Construing this section the courts have generally held, as stated in 46 Am.Jur., Sales, Sec. 257: "Notice of breach of contract which a statute requires a buyer to give the seller in order to hold him liable after acceptance need take no special form. It seems clear that it must refer to particular sales, so far as that is practicable; that it must at least fairly advise the seller of the alleged defects; and that it must be such as to repel the inference of waiver."

See also the annotations to Section 49, U.L.A. Sales. We are of the view that the notice given by respondent was timely, that it clearly advised the appellants of the alleged defects, and that the request that appellants "come out and look it over" and "that I wished he could do something

about it," if not a statement indicating that respondent was looking to appellants to make good the damage, was clearly a statement that repelled any inference of waiver.

■ There is an incidental issue relating to this issue of notice of which brief mention should be made. The original complaint contained no allegation relating to notice of the breach given by respondent. At the opening of the trial respondent asked that he be permitted to amend his complaint so as to allege notice. Permission to amend was granted over the objection of the appellants, and appellants then asked for a continuance of the trial which was denied. We believe the granting of the motion to amend was proper under the provisions of SDC 33.0914. Respondent's testimony as to notice related only to the conversation had with the defendants who were present at the trial. No reason appears, therefore, for continuing the trial for the purpose of allowing defendants time to obtain testimony to refute that given by plaintiff. The record discloses that this conversation between the parties relating to the notice was fully developed at the trial by both parties. An unjustifiable delay of the trial would have resulted if the motion for a continuance had been granted.

■ The most troublesome issue presented relates to the sufficiency of the evidence to establish that plaintiff's damage was caused by the cinder blocks being of insufficient strength for the purpose for which they were purchased. The testimony most favorable to the plaintiff on this issue, by which we are of course bound in our review of this case, is substantially as follows: Plaintiff had purchased and moved to his ranch an old house which was a one-story, five-room house, twenty-four feet four inches wide and thirty-four feet four inches long. The house weighed approximately twelve tons. Plaintiff excavated for the basement and employed a reputable cement man to lay the blocks which he had purchased from defendants and which defendants had warranted to be of sufficient strength to support the house and serve as an adequate foundation therefor. After the blocks were laid and a sufficient time had elapsed for the mortar joints to cure, or set, the house was moved on

the foundation by an experienced house-mover. All of the testimony is to the effect that the house fitted the foundation perfectly and that no difficulty was encountered in placing the house thereon. The work was completed on the late afternoon of July 1. On July 2 plaintiff and his family went to Belle Fourche. They returned to the ranch on the morning of July 4, at which time it was first discovered that the house had fallen into the basement. The west wall of the foundation and part of the north wall were still in place but the south and east walls had collapsed. The plaintiff testified that the cinder blocks had "squashed" that they were just "powder" or "cinders" and that it was necessary to use a scoop shovel to clean up the "mess" following the occurrence.

The evidence disclosed that the American Society for Testing Materials is a recognized "organization with members from the fields of maunfacturers and users of materials, and it is an organization which through its committees prepares specifications for materials and methods of testing materials to determine whether they meet the specifications." This Society has established two classes of cinder blocks, Class A and Class B. The Class A block is specified to be used in exterior walls below grade and for unprotected exterior walls above grade. The Class B block is a block to be used for other purposes. This Society requires that each Class A block has a compressive strength of at least 800 lbs. per square inch and a Class B block 700 lbs. per square inch. In the summer following the collapse of the walls the plaintiff sent two of the remaining blocks to State College at Brookings for testing. These blocks had an average test for compressive strength of 265 lbs. per square inch. Six blocks were submitted to the School of Mines at Rapid City and these tested from 272 to 712 lbs. per square inch. By the application of mathematics it was established that blocks with a compressive strength of 265 lbs. will support the direct weight or thrust of a house weighing twelve tons. About all this testimony establishes, therefore, is that while blocks showing a compressive strength of 265 lbs. would support the direct weight or thrust of this house, such

blocks are below the standard required by the American Society for Testing Materials.

Of course the blocks that failed were beyond any possibility of testing. These blocks were in the same condition as were the tested blocks after being subjected to a pressure beyond their compressive strength.

We have failed to find in the record any evidence to show that this house fell into the basement from a cause other than that assigned by the plaintiff. Under this record the blocks were properly laid, the footings were sufficient, the house was placed squarely upon the foundation, and the work performed by people experienced in their trades. There was an attempt to establish that a windstorm occurred on the afternoon of July 3, but the evidence presented by plaintiff fairly established that there was no unusual wind at his premises.

■ ■ It is a well established rule that neither courts nor juries are authorized to indulge in speculation or guesswork as to the cause of accidents; there must be some tangible evidence from which it may be fairly said what brought about the accident. However, as we view this record this is not a case where there are two or more causes upon which one may theorize as to the cause of the accident. True it is suggested that the blocks might have been improperly laid, that the house was improperly moved, and that there was a windstorm, but the record refutes all of these suggestions. On the other hand, the condition of the blocks that failed was such that in our opinion it supports the essential finding of the jury that the failure was due to an insufficient strength of these blocks to carry the weight of this house.

We have considered the assignments relating to the admission and rejection of evidence. If there was error in this respect we are satisfied it was without prejudice to appellants. The case was fairly and fully tried as evidenced by the transcript of more than 400 pages. The issues were submitted to the jury under complete instructions to which no exceptions were taken.

The judgment is affirmed.

All the Judges concur.