Adeline Sollars, Plaintiff-Appellee, v. Grover Blayney, Defendant-Appellant.

Gen. No. 10,342.

Third District.

July 27, 1961.

Rehearing denied August 25, 1961.

Sebat, Swanson, Banks & Jones, of Danville (Ralph J. Swanson and Carroll Dukes, of counsel) for appellant.

Unger, Litak & Groppi, of Danville (Gino Groppi, of counsel) for appellee.

REYNOLDS, J.

Plaintiff, a tenant of the defendant, fell in her apartment on the second floor of the building owned by defendant. The building was a two story brick building with a flat or fairly flat, built up roof. The apartment occupied by the plaintiff was in the center of the second floor, there being three other apartments. The lower floor was occupied by the defendant in the operation of a drug store. At the time of the accident the defendant was not present, being in Florida for the winter, but one of his clerks, Fay Lazell had charge of the building and kept his books. There were other clerks and one, Mrs. Vera Malloy, testified that she and the other clerks collected rents for the defendant from time to time, gave receipts for rents and other collections.

Plaintiff was shown the apartment by Mrs. Malloy, who was moving out of it to another apartment in the same building. There is no showing that Mrs. Malloy had any authority to show the apartment, nor is it contended she had any authority to authorize any repairs or to do anything connected with the building, other than she did, from time to time take rent money and give receipts. Taking of rent money by Mrs. Malloy was not shown to be with the defendant's knowledge. Only Fay Lazell had the authority to manage the defendant's business in his absence and she had authority to make repairs when necessary and manage his business as the occasion arose. The accident took place on the evening of March 5, 1959. Plaintiff had been watching television in her living room and started to her bedroom, and in doing so had to pass through her kitchen. There was a light in the living room that provided light for her to see for walking through the kitchen but no light on in the kitchen or her bedroom. In walking through the kitchen, she slipped in a puddle of water and sustained serious

344

and permanent injuries to her right arm and left knee. The plaintiff was alone in her apartment. She had gone to her kitchen earlier to make up a lemon drink and at that time she did not notice any leak. She was not sure whether it had rained earlier in the day but testified it rained hard the evening of the accident. The presence of water in the kitchen and of the leak was corroborated by Mrs. Malloy, Mr. Houghton, the ambulance driver, Mr. Ibbotson, a painter summoned to help with Mrs. Sollars after the accident, and the son-in-law and daughter, Mr. and Mrs. Weir. Some three or four weeks prior to the accident plaintiff had noticed small leaks in the kitchen and in the hall opposite. She told this to Mrs. Malloy but to no one else. Plaintiff offered to prove that she reported this to Mrs. Malloy and that the following day she heard men on the roof. She did not know for what purpose the men were on the roof, what they did, and did not know whether Mrs. Malloy reported the leak. The court did not permit this testimony in the absence of proof that Mrs. Malloy was an agent with authority to accept reports of leaks, and in the absence of proof as to what the persons on the roof did or were doing. There is no evidence that Mrs. Malloy reported the leak to anyone, or did anything about it.

The evidence showed the roof to be a tar and felt composition roof of the kind called a built-up roof. There was some evidence that water had collected on the roof in the northwest corner of the building. There was some swishing of water when walked upon. There were television masts on the roof and there had been some trouble with leaks around the television installations from time to time. After the accident a new roof was put on and the man who put on the new roof testified the old roof was in good condition, considering its age and that a "mop" job would have kept it water-tight for at least two years. The defend-

ant told him to advise him whether to do a mop job or put on a new roof and he advised the putting on of a new roof. In putting on the new roof, he found no rotten boards or places to show that there had been leakage. The evidence further showed that within reasonable time after leaks were reported, they were fixed. Mrs. Malloy who lived some two or three years in the apartment where the plaintiff fell, testified she only observed one small leak in the apartment when she lived there, and that upon reporting it, the leak was fixed promptly. She testified that the defendant had had trouble with the roof and there had been several patch jobs.

Harry Neal, a carpenter-contractor testified he had kept the roof of the Blayney building in repair for several years. He had patched the roof around the television aerials in the early part of 1959 at the request of Fay Lazell. After that he received no further requests to repair the roof. He had inspected the roof in the summer of 1958 and said it was in good condition at that time. There was some checking but the condition was good. He admitted that roofs with leak-proof cementing, do leak at times.

The testimony of Walter W. Sheets, a witness for the plaintiff, was that when he walked on the roof there was a "swishing effect", although the surface was dry. This was in November 1958. Sheets testified to a like condition of the roof in March 1958. This witness also testified there were heat cracks in the upper layer of the roof and definite signs of checking on the surface. In his opinion there were definite signs of deterioration of the roof. Conrad Porter who worked with Sheets, testified that when he walked across the roof there would be little geysers of water squirt up.

The defendant admitted that for two years prior to the accident of the plaintiff that there had been sev-

346

eral leaks, which he said had been taken care of promptly. He said that when he had a complaint he would have a man go on the roof, try to find the leak and put tar on it.

Trial was had before a jury and the jury found for the plaintiff and assessed her damages at $12,500. The defendant appeals to this court.

The defendant contends there was no evidence of negligence on the part of the defendant, claims contributory negligence on the part of the plaintiff and that certain proper instructions of the defendant were refused by the court.

■■■ Contending that there was no evidence of negligence on the part of the defendant, the defendant argues that the court should have directed a verdict for the defendant. The rule as to the propriety of the trial court directing a verdict for the defendant has been passed upon by our courts many times. If there is any evidence, together with all reasonable inferences to be drawn therefrom, which tends to prove the material allegations of the complaint, the cause should be submitted to a jury and the trial court has no right to direct a verdict. Friesland v. City of Litchfield, 24 Ill App2d 390, 164 NE2d 606; Pantlen v. Gottschalk, 21 Ill App2d 163, 157 NE2d 548; Wills v. Paul, 24 Ill App2d 417, 164 NE2d 631. Even where the facts are undisputed or admitted but where a difference of opinion as to the inference that may be legitimately drawn from them exists, it is primarily for the jury to draw the inference. Denny v. Goldblatt Bros. Inc., 298 Ill App 325, 18 NE2d 555. Conversely, where there is total failure to prove an essential element of the plaintiff's case, the court has the duty to direct a verdict as a matter of law.

■■ In this case plaintiff must prove that the defendant was negligent by the greater weight or preponderance of the evidence. The mere happening of

347

an accident does not of itself raise any presumption of negligence on the part of the defendant. Louis v. Checker Taxi Co., 318 Ill App 71, 47 NE2d 351; Keller v. Menconi, 7 Ill App2d 250, 129 NE2d 341.

 Negligence on the part of a landlord may be proved by proof of actual notice of a condition that is dangerous to his tenants, or by constructive notice. Where a landlord leased to a tenant part of a building, retaining control over remaining part of building including the roof, it was duty of landlord to keep roof in repair so that tenant might not be injured in his holding. Johns v. Eichelberger, 109 Ill App 35. The basis of this rule is that the landlord having retained control over all but that leased to the tenant, must properly maintain that over which he retains control. Where the landlord retains control over premises used in common by tenants, he owes them a duty to keep premises in reasonably safe condition, and is liable for injury occasioned by his failure to do so. Myrick v. Herrmann, 17 Ill App2d 301, 149 NE2d 792; Murphy v. Illinois State Trust Co., 375 Ill 310, 312, 31 NE2d 305; Holsman v. Darling State Street Corp., 6 Ill App2d 517, 128 NE2d 581. Here the landlord Blayney retained control of the roof and he owed a duty to his tenants to keep this roof in a state of repair so that it would not leak or endanger the life, health or property of his tenants below it. The duty of the defendant is plain and not disputed. However, he is not charged with insuring the safety of his tenants. His duty is the exercise of reasonable care. Taylor v. Geroff, 347 Ill App 55, 106 NE2d 210. If the roof was defective, the defendant would not be liable unless he had actual or constructive notice of such fact. Kahler v. Marchi, 307 Ill App 23, 39 NE2d 854.

 Considering the evidence both for the plaintiff and for the defendant there is sufficient evidence

348

that the condition of the roof was such that the defendant knew or should have known of its condition that would not permit the court to take the matter away from a jury and direct a verdict. A question of fact is presented and the cause properly was submitted to a jury. The large puddle on the floor of the kitchen of the plaintiff, which is undisputed, the leak of a short time before, the admission by the defendant that several leaks had been repaired in the two years before the accident, the testimony of the television men that the roof was heat checked and cracked, and that when they walked across it water would squirt up or swish, the fact that a new roof was put on after the accident, all add up to a condition that might justify a jury in finding that the roof was defective, that the defendant knew it, or should have known it, and that this leaking and defective roof caused the plaintiff to fall and injure herself.

■ As this court has held many times, the determination of a jury on questions of fact will not be disturbed unless palpably erroneous or clearly against the weight of the evidence. In this case, there is evidence to support the jury's finding.

■ The defendant claims contributory negligence, but we fail to find in the evidence any testimony that would support this contention, except the fact that the plaintiff went into an unlighted kitchen. Not a completely dark kitchen, but one partially lighted from an adjoining room. This was the plaintiff's apartment. She was very familiar with every room in it and the position of everything in the kitchen. She did not stumble over something she had left in her path, but she fell or slipped on water which had leaked into the kitchen from above. She could not reasonably be required to anticipate such a condition and the failing to turn on the light, before walking

349

across the kitchen, would not constitute contributory negligence.

As to the instructions complained of, an examination of the whole of the instructions, both for the plaintiff and the defendant, shows the jury was properly instructed.

For the reasons stated, the judgment is affirmed.

Affirmed.

ROETH, P. J. and CARROLL, J., concur.