BOE, Respondent v. HEALY, Appellant

(168 N.W.2d 710)

(File No. 10460. Opinion filed June 12, 1969)

Davenport, Evans, Hurwitz & Smith, Lyle J. Wirt, Sioux Falls, for defendant and appellant.

Robert Patterson, Jr., William L. Dickey, Sioux Falls, for plaintiff and respondent.

HOMEYER, Judge.

Plaintiff, Nancy Boe, was a tenant in a duplex owned by the defendant, James Healy, and in this action seeks to recover from him damages for the loss of her personal property as the result of a fire. A jury found in her favor. Defendant's motions for directed verdict, and for judgment notwithstanding verdict and, in the alternative, for a new trial were denied and he appeals. Error is assigned in (1) the denial of such motions, and (2) in instructions.

The duplex was a two-story frame building with an upstairs apartment, a ground floor apartment, a front and rear porch, basement, back yard and garage. It was so designed that parts of it were used exclusively by occupants of the respective apartments and other areas were used in common by all tenants. At the time of the fire, which occurred on January 2, 1966, plaintiff occupied the upstairs apartment and a group of boys lived in the downstairs apartment. Plaintiff began her tenancy under an oral lease in April, 1965. The defendant acquired the property on July 18, 1964.

The apartment duplex had one chimney which was constructed of brick and mortar and rose from a concrete floor in the basement and extended through the interior of both apartments to above the roof. Each apartment had a fireplace attached to and within the chimney and each apartment also had its own gas heating furnace connected to the same chimney. Other parts of the structure used in common were a front porch and the entrance thereto; a rear porch and steps for access to it; a single stairway to the basement; and the rear door to the building. Each fireplace had a metal plate at its base which when removed would allow ashes and debris to be dropped through a flue to the bottom of the chimney. Plaintiff had never used the fireplace in her apartment.

Each apartment lessee had storage space in the basement. In the southwest corner were two small storerooms, one for each apartment, with separate doors, where storm windows, screens, and awnings were kept for the apartments. The chimney was located within the area where the storm windows, etc., for plain-

tiff's apartment were stored and it formed a part of a solid wall between areas used by the respective tenants. There was evidence that cloth awnings and screens for plaintiff's apartment were placed against the chimney; that it was poorly lighted; that the awnings had not been used for some time and not while plaintiff rented the apartment. There was also evidence that during the evening before the fire the tenants in the first floor apartment had a fire in their fireplace.

Plaintiff used as one of her chief witnesses an assistant fire chief who had had many years experience in fighting fires and investigating their causes. He had attended the fire and had made a post fire investigation to determine its cause. He testified that there was a hole and some loose bricks near the base of the chimney in the area where cloth awnings and screens had been stored. He took photographs shortly after the fire which were received in evidence. One of such photographs, Exhibit 2 is shown below.

Exhibit 2

The assistant fire chief gave an opinion that a burning log had dropped from the fireplace to the base of the chimney; that a spark or ember came through the openings in the area of the loose bricks and ignited the cloth awnings; that they in turn started the screens on fire, and the fire then spread through the walls to plaintiff's second floor apartment.

■ As a general rule the owner of a building who has leased such building to another without any agreement to repair is not liable to a tenant or to his invitees for injuries sustained by reason of its unsafe condition. Wiggins v. Pay's Art Store, 47 S.D. 443, 199 N.W. 122; 52 C.J.S. Landlord and Tenant § 417(3). However, this rule does not apply where the owner reserves control of a portion of the premises for use in common by himself and the tenants, or by different tenants. John Moodie Dry Goods Co. v. Gilruth, 35 S.D. 567, 153 N.W. 383; Simmons v. Pagones, 66 S.D. 296, 282 N.W. 257; West v. Hanley, 73 S.D. 540, 45 N.W.2d 455. The landlord's liability has been said to be one sounding in tort and based upon negligence and not as arising from breach of the leasing contract. 52 C.J.S. Landlord and Tenant § 417(6). Exceptions to the general rule are most often found in cases where injuries occur in the use of stairways, hallways, and elevators where either the owner has control or the owner and the tenant have joint control. Cases are collected and discussed in Annot., 25 A.L.R.2d 44 and 26 A.L.R.2d 468.

The controlling rule applicable appears in Restatement of the Law, Torts 2d, § 361: "A possessor of land who leases a part thereof and retains in his control any other part which is necessary to the safe use of the leased part, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care (a) could have discovered the condition and the risk involved, and (b) could have made the condition safe."

Under Comment b: "The rule stated in this Section applies to the maintenance of walls, roofs and foundations of an apart-

ment house or office building. It applies also to **any other part** of the land the careful maintenance of which is essential to the safe use of the rooms or offices or portion of land leased to the various lessees, such as the central heating, lighting, or water system." (emphasis ours)

Pertaining to roofs which we believe are closely analogous to chimneys the following text statement appears in 52 C.J.S. Landlord and Tenant § 417(10) with supporting cases cited in the notes: "Inasmuch as one of several tenants of a building has not the right of access or the right to repair the roof, a landlord of such a building is deemed to be in control of that portion of the building, and, while he is not an insurer of the safety of the roof, he is required to exercise reasonable care to keep it in a reasonably safe condition, and is liable to a tenant for injuries or failure to perform that duty." See Sollars v. Blayney, 31 Ill.App.2d 341, 176 N.E.2d 477.

In our opinion the court correctly determined as a matter of law that the defendant had retained control of the chimney with means of access thereto for use in common by his tenants.

■ Where the landlord has retained control over a portion of the leased premises for the common use of his tenants, liability depends upon actual or constructive notice of the claimed defect. He may be liable where the defect has "existed for such a period of time as to justify the conclusion that, in the exercise of ordinary care, he should have known of its existence within such time as would have given him a reasonable opportunity to remedy the condition or where by the exercise of reasonable care he could have discovered the defective condition and made it safe. Constructive notice may be implied from the long-continued existence of the defect * * *". 52 C.J.S. Landlord and Tenant § 417(16); Henry v. First Nat. Bank of Kansas City, 232 Mo.App. 1071, 115 S.W.2d 121; Morris v. King Cole Stores, 132 Conn. 489, 45 A.2d 710. The evidence does not show that either defendant or plaintiff had actual notice of the defect.

■ The important question here is that a constructive notice; that is, whether the condition in the chimney had existed for such a length of time that defendant in the exercise of due care should have discovered it. There is no direct evidence as to the length of time the defect had existed, but the plaintiff urges that the evidence permits an inference that it existed a sufficient length of time that defendant in the exercise of ordinary care should have known of the existence of the condition in time to have reasonable opportunity to repair the same. We believe the jury could so find.

Exhibit 2 supra tends to show that the defect was not of recent origin. A reasonable inference is that it existed when defendant acquired the property which was nearly 18 months before the fire and probably long before that time. The assistant fire chief testified that the bricks were loose and mortar was missing; that he shone a light through the opening and a photograph was taken down the chimney from the first floor fireplace which showed a log and other debris at the base of the chimney. Some references in the testimony indicate that the opening may have been used as a clean out for ashes. After the fire a metal door was placed over it.

The defendant testified he inspected the duplex including the basement and the area around the chimney several times before he purchased the property; that he may have spent about an hour in the basement; that during his ownership and before the fire he likewise was in the basement on a number of occasions and was aware that storm windows, screens, and cloth awnings were stored in the storerooms adjacent to the chimney.

We believe it was a question of fact for the jury to determine whether the defendant in the exercise of ordinary care should have discovered the hazardous chimney condition and the risk involved in time to make reasonable repairs for the safety of his tenants. In our opinion a jury could find an inspection such as ordinary care required would have revealed the

defect. See Stupka v. Scheidel, 244 Iowa 442, 56 N.W.2d 874; Graeber v. Anderson, 237 Minn. 20, 53 N.W.2d 642.

In West v. Hanley, supra, this court quoted from Reardon v. Shimelman, 102 Conn. 383, 128 A. 705, 39 A.L.R. 287. In the latter case a landlord was held liable when he permitted ice and snow to accumulate upon a common approach to a tenement house. Liability was predicted upon the fact that he knew, or in the exercise of reasonable supervision and inspection ought to have known, of the dangerous condition and failed to exercise reasonable care to guard against injury because of it.

■ The court instructed by quoting verbatim sections of the Uniform Building and Fire Prevention Codes of the City of Sioux Falls.[1] Defendant objected to such instructions which he said are "a correct statement of the law but not applicable" because the evidence did not show any failure to maintain the duplex in a safe condition and no evidence upon which a jury could find that it was maintained in a hazardous condition resulting in the fire that caused plaintiff's damage. For reasons stated supra, we are of the opinion that there was evidence from which the jury could find that defendant was negligent and consequently his objections to said instructions are without merit.

■ The court also quoted SDC 38.0409, now SDCL 1967, § 43-32-8, in its Instruction No. 9.[2] Although the record shows an objection to "instruction number nine" it is apparent there

---

1. Section 104 of the Building Code provides: "All buildings or structures both existing and new, and all parts thereof, shall be maintained in a safe and sanitary condition. All devices or safeguards which are required by this Code in a building or structure when erected, altered, or repaired shall be maintained in good working order. The owner or his designated agent shall be responsible for the maintenance of buildings and structures." Section 28.12 of the Fire Prevention Code provides: "All chimneys, smokestacks or similar devices for conveying smoke or hot gases to the outer air and the stoves, furnaces, restaurant type cooking equipment, incinerators, fire boxes or boilers to which they are connected shall be constructed and maintained in such a manner as not to create a hazardous condition."

2. Instruction No. 9 provides: "Dwelling made fit by lessor. The lessor of a building intended for the occupation of human beings must, in the absence of an agreement to the contrary, put it into a condition fit for such occupation, and repair all subsequent dilapidations thereof except that the lessee must repair all deteriorations or injuries thereto occasioned by his ordinary negligence."

was in reality no objection thereto,[3] but the objection was intended for Instruction No. 10.[4] There is no other objection to No. 10. This assumption is fortified by appellant's brief which contains no reference to or argument upon Instruction 9, but urges error in the giving of Instruction No. 10. It is elementary that on an appeal from a judgment assignments of error which are not discussed or argued in appellant's brief are deemed abandoned. Hutchinson County v. Bender, 64 S.D. 109, 264 N.W. 816. Consequently, Instruction No. 9 requires no further discussion. As to Instruction No. 10, we hold there was no error. It correctly states the applicable law. Requested instructions refused were factually inapposite.

Judgment affirmed.

BIEGELMEIER, P. J., and HANSON, J., concur.

ROBERTS and RENTTO, JJ., dissent.

ROBERTS, Judge (dissenting).

There was as I view the record an erroneous submission of the case to the jury and an utter failure of proof on the part of the plaintiff requiring a reversal.

---

3. "Defendant objects to court's proposed instruction number nine and that part which states that where the landlord retains possession and control of certain portions of leased premises, that a duty is imposed upon him to use reasonable care to keep these portions in a safe condition for the reason that the only portion of the duplex which was used in common by the plaintiff and the other occupiers of the duplex were the stairway and there was no evidence to show that defendant had a duty to keep them in good condition in view of the fact that it was the tenant's responsibility and no evidence to show that if he did have such a duty, that he did not so maintain it."

4. Instruction No. 10 provides: "Where the landlord retains possession and control of certain portions of leased premises for use in common by different tenants, a duty is imposed upon him to use reasonable care to keep these particular portions of the leased premises in a safe condition and a failure to do so would be negligence. To establish a violation of the duty above stated in this case, the evidence must show that there was a defective condition that resulted in the fire and that the defendant had knowledge of, or should have had knowledge in the use of ordinary care, of such defective condition and failed to use reasonable diligence in correcting the same. The length of time during which an unsafe or defective condition existed may be so considerable as to justify an inference that the owner or landlord, in the exercise of ordinary care, should have known of the existence of the condition in time to have reasonable opportunity to repair or improve the same. However, you are instructed that the defendant as owner of the premises, is not an insurer but any liability for the fire must be based upon negligence, that is a violation of his duty in maintaining the premises as above stated."

While the common law makes a landlord who rents separate parts of his premises to different tenants liable to them for failure to exercise ordinary care to keep safe those parts over which he retains control for their common use, yet the proof should satisfactorily show that the landlord has been guilty of negligence in that regard and establish with reasonable certainty the fact that the injury complained of was the result of such conduct. It is the burden of the tenant to show that the landlord knew of the defect or that it had existed for such length of time before the injury as to charge him with notice and to have afforded him an opportunity to make inspection and repair. 32 Am.Jur., Landlord & Tenant, § 694.

At the time of the fire occurring on January 2, 1966, plaintiff and her family occupied the upstairs of a duplex which defendant purchased in August 1964. The two storerooms in the basement were adjacent to the chimney which was a part of a wall between the rooms. The tenants kept storm windows, screens and awnings for their apartments in their respective storerooms. There is evidence that plaintiff's husband had on occasions been in the storeroom "to take screens out and storms back" and did not see any defect in the chimney. The defective condition could have been as easily discovered by plaintiff or a member of her family as by defendant.

The realtor who negotiated sale of the duplex to defendant testified: "Q. How many occasions would you say you were in there? A. Approximately fifteen, sixteen times. Q. Were those occasions when you were showing it to prospective buyers? A. Yes, sir. * * * Q. During those occasions when you were in there, did you inspect the property? A. Yes, sir. Q. Do you recall seeing this particular chimney that we have been talking about in this lawsuit? A. Yes, sir. Q. During the times you were down there in that basement and you saw that chimney, did you see any loose mortar or bricks on that chimney? A. No, sir."

The assistant fire chief who was at the scene of the fire shortly after an alarm was sounded and made an investigation

testified on cross-examination as follows: "Q. Now, Mr. Telling-huisen, as you looked at that chimney and as you looked at that hole which shows there in Exhibit Number 2, was there any way that you could determine how long that hole had been there? A. No. I don't know. It could have been there for a day, two weeks or years. I don't know. * * * Q. Except for that hole there did all of the rest of the chimney appear to you to be in good condition? A. Yes."

There is no pretense that defendant had actual knowledge of the defect in the chimney. There is no evidence to indicate that defendant had any notice of the defect and no evidence as to how long the defect had existed. The facts are not inconsistent with the theory that the hole in the chimney was caused when plaintiff's husband was taking storm windows in or out of the storeroom.

It is of course elementary that a jury may not be denied the right to draw reasonable inferences. An inference can be drawn only from facts in evidence or from something which is known to be true. It cannot be based on surmise, speculation or conjecture. Gilger v. Montgomery Lumber Co., 73 S.D. 599, 47 N.W.2d 281. A jury cannot draw an inference merely because facts necessary for recovery are beyond the scope of possible evidence. As already observed there is no evidence of how long before the fire the defect in the chimney had existed. The majority concludes that Exhibit No. 2, which is a photograph showing the defective condition after the fire, tends to show that the defect was not of recent origin and that the defective condition had existed for such length of time that defendant should have known of it affording him opportunity to inspect and repair the chimney. There is nothing in the photograph indicative of the length of time that the defect had existed. The asserted inference is contrary to the positive and uncontradicted testimony of the assistant fire chief. The probative effect of the exhibit in question and evidence otherwise in the case are not in my opinion sufficient to warrant the inference.

No doubt the jury was misled by an erroneous submission of the case. Plaintiff contends that there was a failure on the part of the defendant landlord to comply with duties imposed by statute and ordinances in reference to the care of the premises which constituted actionable negligence on his part. Plaintiff states in her brief that "[I]n the City of Sioux Falls both the Fire Prevention Code and the Building Code establish a duty of care and a class of persons to be protected (quoting provisions of city ordinances). * * * It is also the obvious intent of the explicit language of SDC 38.0409 to protect the class of persons that reside in dwellings as tenants. * * * The statutes provide that the owner—in this instance, the landlord—has the clear duty owing to the tenants, to maintain the chimney in such a manner as to not create a hazardous condition. * * * The course of conduct of the defendant thus brings him under the umbrella of the concept of negligence per se for violation of a duty imposed by criminal statute that is the proximate cause of the damage to the plaintiff. The defendant failed properly to maintain the chimney."

Defendant excepted to the giving of instructions requested by plaintiff submitting to the jury this theory of the case. The court quoted in his instructions verbatim the provisions of SDC 38.0409 which provides: "The lessor of a building intended for the occupation of human beings must, in the absence of an agreement to the contrary, put into a condition fit for such occupation, and repair all subsequent dilapidations thereof except that the lessee must repair all deteriorations or injuries thereto occasioned by his ordinary negligence."

A companion and succeeding section, SDC 38.0410, provides that if the lessor fails after notice to repair then the lessee may repair and deduct the expense thereof from rent or vacate the premises. The same or similar statutes have been construed in other states. The California court has consistently adhered to the construction that the only consequence of the breach of the landlord's obligation is that the tenant may either vacate or after notice repair and that the statutes are not to be extended by implication to alter the common law and provide redress in

damages for injuries to person or property because of the failure of the landlord to comply with the statutory requirements. Van Every v. Ogg, 59 Cal. 563; Sieber v. Blanc, 76 Cal. 173, 18 P. 260; Grazer v. Flanagan, 35 Cal.App. 724, 170 P. 1076; see also Dier v. Mueller, 53 Mont. 288, 163 P. 466; Lavery v. Brigance, 122 Okl. 31, 242 P. 239; Newman v. Sears, Roebuck & Co., 77 N.D. 466, 43 N.W.2d 411, 17 A.L.R.2d 694. The instruction premised upon the provisions of section 38.0409 related to a fundamental and controlling principle.

The court also quoted in its instructions and submitted for the consideration of the jury the provisions of Section 104(h) of the Building Code and Section 28.12 of the Fire Prevention Code of the City of Sioux Falls. I would hold that these ordinances requiring the owners of buildings and structures within the city to maintain them in a safe and sanitary condition and to construct and maintain chimneys so as not to create a hazardous condition, if within the municipal authority, are not to be construed as modifying settled common law rules relating to the liability of landlords for injury due to defects in rented premises. Palmigiani v. D'Argenio, 234 Mass. 434, 125 N.E. 592; Johnson v. Carter, 218 Iowa 587, 255 N.W. 864, 93 A.L.R. 774; Tair v. Rock Inv. Co., 139 Ohio St. 629, 41 N.E.2d 867; Restatement of Torts, § 286, Comment c.

There is attached to the transcript separate assignments predicating errors to the giving of the instructions in question and referring to the pages of the transcript where the alleged errors appear. SDC 1960 Supp. 33.0735. Respondent does not claim that the objections to the giving of the instructions were not sufficiently specific, but joins in fully briefing and arguing the questions presented. The record thus enabled counsel for the respondent to argue the propriety of the instructions. The failure to assign error has been held not to require dismissal where there was no question as to the exact error complained of. Western Surety Company v. Schroeder, 45 S.D. 115, 186 N.W. 562. In accordance with the rule stated in 5 C.J.S. Appeal and Error §§ 1238, 1239 an appellate court may in the interest of justice consider fundamental or basic errors apparent upon

the face of the record even though they have not been specifically assigned. The court sustains recovery on the basis of common law liability. The instructions if understood by the jury in the sense urged upon this court and no doubt argued below could have been determinative of the outcome. The judgment should in my opinion be reversed and a new trial granted.

RENTTO, J., concurs in dissent.