Dale CARLSON and La Vona Carlson,
Plaintiffs and Respondents,

v.

Donald RYSAVY, d/b/a Don's Mobile
Homes, Defendant and Respondent,

and

Town & Country Mobile Homes, Inc.,
Defendant and Appellant.

No. 11931.

Supreme Court of South Dakota.

Argued June 6, 1977.

Decided Jan. 5, 1978.

Charles Rick Johnson and Gary E. Davis of Johnson, Johnson & Eklund, Gregory, for plaintiffs and respondents.

John J. Simpson, Winner, for defendant and respondent.

J. M. Grossenburg of Day & Grossenburg, Winner, for defendant and appellant.

MORGAN, Justice.

This is an action for breach of warranty against a dealer and the manufacturer of a double-wide modular home. The plaintiffs, Dale Carlson and La Vona Carlson (Carlsons), commenced the action against the dealer, Donald Rysavy, d/b/a Don's Mobile Homes (Rysavy) of Winner, South Dakota, and the manufacturer, Town & Country Mobile Homes, Inc. (Town & Country). In addition to his answer, the dealer Rysavy counterclaimed against the plaintiffs for an unpaid furniture bill in the amount of $900, and cross-claimed against the defendant Town & Country, alleging that Town & Country pursuant to SDCL 34–34A–5 was statutorily liable for any costs, losses, and damages which might be recovered against defendant Rysavy, including legal expenses not to exceed $1,500. The jury returned three verdicts. The first, in favor of defendant Rysavy on the claim by the Carlsons; the second, against the defendant

Town & Country, and in favor of the Carlsons, in the amount of $9,000; and the third, against the defendant Town & Country, and in favor of defendant Rysavy on his cross-claim, in the amount of $1,100. Judgment was entered on the verdicts and defendant Town & Country's motion for remittitur or new trial was denied, from which judgment and denial of motions the defendant Town & Country appeals. We affirm the judgment in favor of respondents Carlsons and reverse the judgment in favor of Rysavy on the cross-claim and remand for further proceedings.

We first examine the assignments of error raised by the defendant Town & Country with respect to the principal action as commenced by the Carlsons.

The first point argued by the appellant is that the court erred in admitting testimony as to alleged defects raised for the first time at the trial, which defects were not included in any notice given to the appellant, nor were not enumerated in the plaintiffs' complaint, nor were they found in the answers to the appellant's interrogatories. The record discloses that the purchase of the mobile home from Rysavy was made after the plaintiffs had viewed a model or pilot home constructed at the Town & Country plant at Canton, South Dakota. A similar home, with modifications not pertinent to any of the issues in this appeal, was to be delivered and set up at the plaintiffs' site at Sturgis, South Dakota. Mr. Carlson testified that he had inspected the pilot or model home with specific interest in type of siding, insulation, paneling, etc., and that he was told that the home's insulation consisted of 3¾th inch fiberglass batting, and that the roof and floor of the mobile home had sufficient insulation to meet all state specifications required for an electric heating furnace.

Upon delivery of the modular home Mr. Carlson noticed some apparent defects, which he noted on the delivery receipt returned to Town & Country, the most important of which was the fact that there were no heating ducts or tubing in the floor of the home, no hot water heater delivered,

wind and water damage from transportation, and the center I-beams were bent and misshaped. Throughout the ensuing few months the Carlsons were faced with many problems. The two halves could not be bolted together due to the crooked I-beams. In response to continuous telephone calls and inquiries Town & Country finally sent a serviceman, who hired a local welder to force the I-beams together by means of C-clamps and to weld them. The serviceman failed to bring the right size heat tubes, however, he assured the plaintiffs he would return with the right size, which he never did. Mr. Carlson finally had to drive to Winner, pick up the right size, and install them himself. As time progressed and the weather became colder other problems became evident. Pipes froze, temperature in the home with the furnace running at full capacity would only reach 50°, water leaked around the doors and the door frame, and paneling bulged. Upon the suggestion of Rysavy, the Carlsons, late in February of 1975, sent a list of twenty-one defects to Mr. Rysavy for forwarding to Town & Country. There is no dispute that this list was forwarded. In March of 1975, upon investigation, the Carlsons learned that the home was inadequately insulated under the standards for electric furnaces and accordingly hired a local contractor to insulate the home properly. During this process Mr. Carlson discovered that his modular home did not have ⅜th plywood sheeting under the siding, as the modular home they viewed in Canton did, but rather had a cardboard-type substance called Foam core. During all this period, except for dispatching the serviceman in August of 1974, appellant ignored the plaintiffs' complaints.

The requirement for notice is codified at SDCL 57-7-15 and requires that the buyer must, within a reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy.

The commentaries to the 1962 official text, comment 4 at page 167, points out that "the rule * * * is designed to defeat commercial bad faith, not to deprive a

good faith consumer of his remedy." Further, "the content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification * * * must include a clear statement of all of the objections that will be relied on by the buyer." Professors White & Summers, in their hornbook on Uniform Commercial Code at page 347, summarize by stating that "quite clearly the drafters intended a loose test; a scribbled note on a bit of toilet paper will do." [1]

■ The record discloses that the plaintiffs gave notice to Town & Country that the transaction was troublesome. We find no difficulty in holding that the notice given in this case was more than adequate, and Town & Country's utter failure to respond beyond the initial dispatch of a repairman to pull the framework back together leaves them little room to complain. Furthermore, with respect to the two items of which they particularly complained, that is, as to the floor and the roof, the record clearly shows that the condition of the rafters was newly discovered shortly prior to the trial; that counsel for Town & Country and Town & Country's expert were both present at the time it was discovered, and that Town & Country's expert was examined directly during the course of the trial regarding the matter. Town & Country made no motion indicating surprise or asking for any continuances. We find no error in the trial court's ruling on admissibility of that evidence.

The next issue, and easily and the most troublesome one, is what is the proper measure of damages?

■ The provisions of the Uniform Commercial Code, with respect to the buyer's remedies when he accepts the goods and does not reject or revoke his acceptance, but sues for damages because the accepted goods are not as warranted, are codified under the provisions of SDCL 57–8–36, 57–8–37, and, under appropriate circumstances, 57–8–38, 57–8–39 and 57–8–40. In our opinion these have to be read as a whole. The statutory scheme, as it appears from examining all of the statutes, is that (1) where the buyer has accepted the goods and given notification he may recover damages as determined in any manner which is reasonable; (2) the measure of damages is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount; and (3) in a proper case incidental and consequential damages may also be recovered.

The duality of standards between SDCL 57–8–36 and SDCL 57–8–37 is taken from precode law [2] and presumably courts will continue to interpret the more specific rule of SDCL 57–8–37 as governing where applicable. Thus defects relating to the goods, their quality or their title (rather than to the manner of their delivery) will invoke the "formula" of the latter section, looking to a difference in value and not in price. There is no code definition of value application to SDCL 57–8–37. The general definition of value in SDCL 57–1–11 obviously has no relevance here since it looks to the characteristics of an entirely different transaction.

The value criterion in SDCL 57–8–37 is confusing because it serves two very different functions. One use of value is to measure the utility of the defective goods received. Value also serves to define the other component in the compensation equa-

---

**1.** See also *Gilger v. Montgomery Lumber Co.*, 73 S.D. 599, 47 N.W.2d 281 (1951) wherein this Court construed the notice requirement of SDC 54.0149 (Uniform Sales Act which is generally accepted to be the forerunner of SDCL 57–7–15) and stated: "Notice of breach of contract which a statute requires a buyer to give to seller in order to hold him liable after acceptance need take no special form. It seems clear that it must refer to particular sales, so far as that is practicable; that it must at least fairly advise the seller of the alleged defects; and that it must be such as to repel the inference of waiver."

**2.** SDC 54.0169(6) and (7) were repealed by the Session Laws of 1966, Chapter 150.

tion, the value of the goods as warranted, with which the goods as delivered are to be compared. It is noteworthy that the authors of the Uniform Code did not use market price as the measure of damages as they did in the case of buyer's damages for nondelivery or repudiation, SDCL 57–8–34; or seller's damages for nonacceptance or repudiation by buyer, SDCL 57–8–22. The confusion is deepened when we note that the courts and the writers continually interchange value and market value.

SDCL 57–1–4, provides that Title 51 shall be liberally construed and applied to promote its underlying purposes and policies which are set out in SDCL 57–1–1 to be: (1) to simplify, clarify and modernize the law governing commercial transactions; (2) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and (3) to make uniform the law among the various jurisdictions.

SDCL 57–1–29 directs that the remedies provided shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed. SDCL 57–8–37 cautions us to measure damages at the time and place for acceptance.

Town & Country contends, and it is generally held, that a useful objective measurement of the difference in value as is and as warranted is the cost of repair.[3] However, there are many cases in which the injury will be irreparable and therefore the cost of repairs will not serve as a yardstick of the buyer's damage. In such cases the court will have to determine by some other measure the value of the goods as warranted and the value of the goods as accepted.

As the authors in White & Summers noted:

"In sum, the general application of the [SDCL 57–8–37] formula offers a variety of difficult factual problems but few questions that are unique or legally difficult. In many cases the court can refer to the cost of repair in order to estimate the difference in value of the goods as warranted and as delivered. In other cases it will have to cast about for the usual and almost invariably unsatisfactory evidence of market value."[4]

As this Court has recently ruled in the case of *Fredrick et al. v. Dreyer v. Falcon Coach Company, Inc.,* S.D., 257 N.W.2d 835, "fair market value is the usual standard upon which testimony as to damages in such cases is based." We distinguish this case from *Fredrick* because Carlson stated that, while he did not know the market value, he did testify to a substantial value of $5,000 based on the value of the appliances, which value was affirmed by his expert witness. Carlson's opinion was not a backhanded estimate, as that of Fredrick's, and the opinion evidence of his expert was more certain than that in *Fredrick*.

With respect to the value of the goods as warranted, contract price offers strong evidence of such value,[5] although not conclusive.[6]

Viewing the record, we hold that, while there was evidence of a considerable amount of repairs to some of the major discrepancies in construction, many others have not and cannot be adequately repaired so as to place the plaintiffs in as good a position as if Town & Country had fully performed. Therefore, the measure of damages contended for by Town & Country, the cost of repairs, will not serve as a proper yardstick of the buyers' damages, and the trial court did not err in submitting the case to the jury on the difference in value formula.

As Professors White & Summers stated, the court had to cast about for the usual

**3.** White & Summers, Uniform Commercial Code, § 10–2, p. 308; *Curtis v. Murphy Elevator Co. et al.,* 407 F.Supp. 940 (E.D.Tenn.1976); *Cox Motor Car Co. v. Castle,* Ky., 402 S.W.2d 429 (1966).

**4.** White & Summers, Uniform Commercial Code, § 10–2, p. 310.

**5.** *W & W Livestock Enterprises, Inc. v. Dennler,* Iowa, 179 N.W.2d 484 (1970).

**6.** *Mulvaney v. Tri State Truck & Auto Body Inc.,* 70 Wis.2d 760, 235 N.W.2d 460 (1975).

and almost invariably unsatisfactory evidence of market value of the home as delivered.

In this vein we find the Court of Appeals of Michigan holding, in a case involving a similarly inadequately constructed mobile home, that:

"This verdict and judgment does not shock this court nearly so much as the conduct of the defendants in this case. Rather, the sum of $9,000.00 is fair compensation for a life lived in fear, cold and discomfort occasioned by the calculated and deliberate inaction of these defendants breaching the warranties and leading to the plaintiffs' default in contract payments owed to the financing bank and guaranteed by the FHA."[7]

In the majority opinion of this Court in the case of *Ehlers v. Chrysler Motor Corp.,* 88 S.D. 612, 226 N.W.2d 157, 162 (1975) we held that "although substantial, we do not find the damages in this case to be 'flagrantly outrageous and extravagant'."

■ In conjunction with appellant's argument regarding the proper measure of damages, he argues further that the trial court improperly restricted the admission of evidence offered by the appellant intended to controvert or impeach Carlson's evidence on value. As we have previously stated, it is the value of the goods as delivered *at the time and place of delivery* that is required for the formula. We therefore hold that the trial court did not err in refusing to permit impeachment of Carlson by his deposition testimony that he wouldn't take $35,-000 but might take $40,000 for the modular home today. It is not a question of mere rise in value due to general market fluctuation as in the case of *State Highway Commission v. Schiltz,* on which appellant relies;[8] rather, the value today as testified to by Carlson in the deposition was for an entire home, land and improvements of which the modular structure was merely a component part. For the same reason the bank appraisal was inadmissible.

■ With respect, however, to the appellant's direct evidence in the form of an expert witness who had testified from comparable sales as to the present value of the home and by process of extrapolation by deduction of cost of repairs, cost of other improvements, and cost of the land, and adjustment for either appreciation or depreciation, arrive at a value of the component part, the modular home, as it existed in July, 1974, we would hold that the trial court erred in sustaining Carlson's objection to his opinion of value. The foundation laid showed that the witness was familiar with valuation processes by training and experience; that he had familiarized himself with modular home values; that he had carefully examined the home in its present condition; that he had read the Carlson's deposition regarding the complaints of defects, and, based on this information, had arrived at an opinion based on reasonable certainty as to the value of the modular home in July, 1974, disregarding the improvements and lots. If there was a question as to the specific items in his calculations these were subject to cross-examination and at best went to the weight to be accorded his testimony. Granting the owner-buyer the right to testify as to his opinion as to value as delivered and lacking an ascertainable market value, this is probably the only controverting evidence available and so long as it is focused on the value as of the time and place of delivery it should be admitted.

■ While we find that the trial court erred in sustaining the particular objection we further hold that the error was not sufficiently prejudicial to require reversal in view of the fact that the trial court later permitted the witness to testify that in his opinion the value was $2,500 less than the purchase price, or $16,482.62. Town & Country's offer of proof did not specify any figures so we assume that the witness would have testified to a similar figure had the original objection been overruled.

■ Appellant's final argument with respect to the principal action attacked the

---

7. *Lycos et al. v. Gray Mobile Homes Sales, Inc. et al.,* 76 Mich.App. 165, 256 N.W.2d 63, 65 (1977).

8. *State Highway Commission v. Schiltz,* S.D., 242 N.W.2d 156 (1976).

qualifications of the plaintiffs' expert. This court has long held that whether or not expert opinion testimony should be permitted on a particular subject[9] as well as the qualifications and competency of the proffered witness to give opinion evidence,[10] is primarily in the discretion of the trial court and will not be disturbed unless there is no evidence that the witness had qualifications of an expert or the trial court has proceeded upon erroneous legal standards. We do not find that the trial court abused its discretion in permitting the testimony inasmuch as the proffered witness appeared to have sufficient qualifications and the trial court was not proceeding upon erroneous legal standards.

The final point argued by the appellant on his appeal is the insufficiency of the evidence to support the award to defendant Rysavy of $1,100 on his cross-claim against the appellant. The only evidence to support such a verdict was the testimony of the defendant Rysavy that he had incurred $750 legal expenses and $750 out-of-pocket expenses because of plaintiff's claim of breach of warranty.

■■■ SDCL 34–34A–5 makes a manufacturer of a defective mobile home liable to the dealer for all costs, losses and damages which the dealer may sustain by reason of such sale by the manufacturer. We construe this to include attorney fees; however, it applies only to the attorney fees incurred in defending the plaintiff's claim and in this case the defendant Rysavy counterclaimed against the plaintiff and cross-claimed against the manufacturer. We do not construe the statute to cover attorney fees incurred by Rysavy in prosecuting either of the latter claims. Attorney fees can only be recovered to the extent that they are necessarily incurred and reasonable in amount. There can be no recovery of attorney's fees in the absence of evidence from which the amount to be allowed can be properly determined.[11]

■■■ In view of the record this Court finds that there is not sufficient evidence to warrant the $1,100 damages awarded to Rysavy for attorney fees. The record is void of any breakdown of the fees charged as out-of-pocket expenses in the amount of time and hourly wage charged. Based on the insufficiency of the evidence concerning attorney fees, this Court remands this case to the trial court for further proceedings on the matter of recoverable attorney fees.

Thus, we affirm the judgment in favor of the respondents Carlsons, and against the appellant Town & Country, and we reverse the judgment in favor of the defendant Rysavy and against the appellant Town & Country and remand the same for further proceedings in accordance with our opinion.

All the Justices concur.

---

**9.** *Morin v. Chicago & Northwestern Railway System,* 87 S.D. 447, 209 N.W.2d 895 (1973).

**10.** *State ex rel. Helgerson v. Riiff,* 73 S.D. 467, 44 N.W.2d 126 (1950).

**11.** *Rigney v. Swingley,* 112 Mont. 104, 113 P.2d 344 (1941).